**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ABRAHAM ROSADO, ANTHONY AVILA, DARWIN XAVIER CORRALES, ENRIQUE VELASQUEZ, JUAN A. RIVERA, RAMON MARQUEZ, AHMED KAHN, JOSE OSMAN CORRALES VENTURA and EDWIN GARCIA, Individually and on Behalf of All Others Similarly Situated,**<br><br><div align=center>**Plaintiffs,**</div><br>-against-<br><br>**NEW YORK HOIST LLC, NEW YORK PLANK SERVICES INC., NEW YORK PLANK SERVICES LLC, NEW YORK STEEL FABRICATORS INC., NEW YORK STEEL FABRICATORS LLC, U.S. CRANE & RIGGING, LLC, NEW YORK PRE-CAST INC., NEW YORK PRE-CAST LLC, URBAN ERECTORS, LLC, SUPER STRUCTURE CRANE RENTALS, INC., SSB HOIST, INC., THOMAS AURINGER, DAVID AURINGER and RACINE AURINGER, Jointly and Severally,**<br><br><div align=center>**Defendants.**</div> | 13 Civ. 3469 (MKB) (SMG)<br><br>**AMENDED CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## NATURE OF THE ACTION

1.    Plaintiffs are labor foremen, general laborers, steel workers, erectors and hoist

operators for Defendants' construction enterprise providing services including, but not limited

to, bare hoist rental and specialized hoist installations, erecting of steel frames, crane operation,

1

and the construction and installation of planks on construction sites throughout the tri-state area.  Plaintiffs bring this action to recover unpaid wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and supporting regulations, and to recover prevailing wages Defendants required Plaintiffs to pay back to Defendants as kickbacks when working on prevailing wage projects pursuant to NYLL, §198-b *et seq*.  Plaintiffs also bring this action to recover damages for Defendants' failure to provide wage notices or true and accurate wage statements as required by NYLL § 195.  Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants, and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of labor foreman, general laborers, steel workers, erectors, hoist operators and all other employees of Defendants with similar compensation structures.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

5.     Plaintiff Abraham Rosado ("Rosado") was, at all relevant times, an adult

2

individual residing in Kings County, New York.  Rosado consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

6.      Plaintiff Anthony Avila ("Avila") was, at all relevant times, an adult individual residing in Bronx County, New York.  Avila consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

7.      Plaintiff Darwin Xavier Corrales ("Corrales") was, at all relevant times, an adult individual residing in Queens County, New York.  Corrales consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

8.      Plaintiff Enrique Velasquez ("Velasquez") was, at all relevant times, an adult individual residing in Queens County, New York.  Velasquez consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

9.      Plaintiff Juan A. Rivera ("Rivera") was, at all relevant times, an adult individual residing in Kings County, New York.  Rivera consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

10.      Plaintiff Ramon Marquez ("Marquez") was, at all relevant times, an adult individual residing in Kings County, New York.  Marquez consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

3

11.     Plaintiff Ahmed Khan ("Khan") was, at all relevant times, an adult individual residing in Kings County, New York.  Kahn consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

12.     Plaintiff Jose Osman Corrales Ventura ("Ventura") was, at all relevant times, an adult individual residing in Queens County, New York.  Ventura consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

13.     Plaintiff Edwin Garcia ("Garcia", collectively with Rosado, Avila, Corrales, Velasquez, Rivera, Marquez, Kahn and Ventura, the "Plaintiffs") was, at all relevant times, an adult individual residing in Kings County, New York.  Garcia consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

**Defendants:**

14.     Upon information and belief, Defendant New York Hoist, LLC ("NY Hoist") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.

15.     Upon information and belief, Defendant New York Plank Services Inc. ("NY Plank Inc.") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.

16.     Upon information and belief, Defendant New York Plank Services, LLC ("NY Plank LLC") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.  NY Plank LLC and NY Plank Inc. are hereinafter referred to collectively as "NY Plank."

17.     Upon information and belief, Defendant New York Steel Fabricators Inc. ("NY Steel Inc.") is a New York corporation headquartered at 99 St. Nicholas Avenue, Brooklyn, New York 11237.

18.     Upon information and belief, Defendant New York Steel Fabricators LLC ("NY Steel LLC") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.  NY Steel LLC and NY Steel Inc. are hereinafter referred to collectively as "NY Steel."

19.     Upon information and belief, Defendant U.S. Crane & Rigging LLC ("U.S. Crane") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.

20.     Upon information and belief, Defendant New York Pre-Cast Inc. ("NY Pre-Cast Inc.") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.

21.     Upon information and belief, Defendant New York Pre-Cast LLC ("NY Pre-Cast LLC") is a New York corporation headquartered at 99 St. Nicholas Ave, Brooklyn, NY 11237.  NY Pre-Cast LLC and NY Pre-Cast Inc. are hereinafter referred to collectively as "NY Pre-Cast."

22.     Upon information and belief, Defendant Urban Erectors LLC ("Urban Erectors") is a New York corporation headquartered at 99 St. Nicholas Ave., Brooklyn, NY 11237.

23.     Upon information and belief, Defendant Super Structure Crane Rentals, Inc. is a New York corporation headquartered at 99 St. Nicholas Ave., Brooklyn, NY 11237.

24.     Upon information and belief, Defendant SSB Hoist, Inc. is a New York corporation headquartered at 99 St. Nicholas Ave., Brooklyn, NY 11237.

25.     The Corporate Defendants listed in paragraphs 15 to 24 operated together as a

single integrated business enterprise (hereinafter referred to as the "NY Hoist Enterprise").

26.     Upon information and belief, Defendants Thomas Auringer ("T. Auringer"), Dave Auringer ("D. Auringer") and  Racine Auringer ("R. Auringer", and collectively with T. Auringer and D. Auringer, the "Individual Defendants", and collectively with the Corporate Defendants, the "Defendants") are owners, officers, directors and/or managing agents of the Corporate Defendants, whose addresses are unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and are jointly and severally liable with the Corporate Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

5.     Pursuant to 29 U.S.C. §§ 206, 207 and 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of labor foremen, general laborers, steel workers, erectors, hoist operators and all other employees of Defendants with similar compensation structures (the "Collective Action Members") who are or were employed by Defendants since June 14, 2010 through the entry of judgment in this case (the "Collective Action Period").

27.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated in that they were all subjected to Defendants' illegal policy of failing to pay minimum wages for all hours worked and overtime premiums. As a result of that policy, Plaintiffs and the Collective Action Members were not paid wages for all hours worked and did not receive legally required overtime premium payments for all hours worked in excess of forty (40) hours in a given workweek.

6

## RULE 23 CLASS ACTION ALLEGATIONS

28.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all labor foremen, general laborers, steel workers, erectors, hoist operators and all other employees of Defendants with similar compensation structures who are or were employed by the Defendants within New York (the "Class Members") at any time since June 14, 2007 through the entry of final judgment in this case (the "Class Period").

29.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.

30.     Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

31.     Upon information and belief, there are well in excess of forty (40) members of the Class during the Class Period.

32.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class, including whether Defendants had a corporate policy of failing to pay wages for all hours worked and overtime premiums when employees worked in excess of forty (40) hours in a given week; whether Defendants had a corporate policy of "shaving" employees' hours recorded; whether Defendants had a corporate policy of failing to compensate Plaintiffs and Class Members for work performed at the Yard and  for time spent traveling between the Yard and the job sites; whether Defendants had a corporate policy of requiring Plaintiffs and the Class to re-pay Defendants a portion of their prevailing wages earned while performing labor on public works projects; and whether Defendants failed to

7

provide wage notices and true and accurate wage statements as required by NYLL § 195.

33.    The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent the Class.  There are no conflicts between Plaintiffs and the members of the Class and Plaintiffs' counsel are experienced in handling class litigation.

34.    The Third through Seventh Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2).  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

35.    The Third through Seventh Causes of Action are also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    whether each Defendant was an employer of the members of the Class within the meaning of the NYLL;

    b.    whether Defendants had a policy of failing to pay wages for all hours worked and overtime for all hours worked in excess of forty (40) per week by (1) failing to compensate employees for time worked at the Yard and time spent traveling between the Yard and the job sites and (2) falsely reporting the number of hours worked by employees at the job site such that employees were not paid for one (1) to ten (10) hours per week worked at the job sites;

    c.    whether the Defendants had a policy of receiving kickbacks from Plaintiffs and the Class by requiring them to pay Defendants a portion of their prevailing wages earned while providing labor on public works projects; and

d.   whether Defendants failed to provide  true and accurate wage statements with every payment of wages to Plaintiffs and Defendants' other employees and annual wage notices in accordance with NYLL § 195; and

e.   whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, interest, cost and disbursements and attorneys' fees.

36.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

Defendants' Companies

37.   At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

38.   Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

39.   At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each member of the Collective Action within the meaning of the FLSA, 29 U.S.C. § 203(d).

9

40.   At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each member of the Class within the meaning of the NYLL, §§ 2 and 651.

41.   At all relevant times, Defendants have been Plaintiffs' employers and/or joint employers within the meaning of the FLSA and NYLL.

42.   Defendants' operations are interrelated and unified.

43.   Upon information and belief, the NY Hoist Enterprise operated all of its entities out of Defendants' corporate headquarters, located at 99 St. Nicholas Avenue, Brooklyn, New York 11237 ("Defendant's Central Office").   Upon information and belief, Defendants centrally operate and manage the NY Hoist Enterprise, including labor relations and payroll, from Defendants' Central Office.

44.   The NY Hoist Enterprise maintains at least three (3) websites for its various services, all of which list common addresses as their business locations.

45.   According to Defendant NY Hoist's website at http://newyorkhoist.com, "New York Hoist, LLC has been servicing the industry for over 2 decades servicing all customers in and out of the tri-state area."  NY Hoist is a "family-owned and operated company…offering a wide range of services from bare hoist rental to specialized hoist installations in front, rear, sides, court yards, and on top of existing, new buildings."  "We are the largest open shop, non-union, prevailing wage personnel and material construction hoist company in the USA."  NY Hoist's website also lists Defendants' Central office as the "Corporate Headquarters," along with the addresses of three (3) yards and warehouses located at: (i) 1520 Decatur Street, Ridgewood, NY 11385 (the "Yard") (ii) 1 Oak Point Avenue, Bronx, NY 10474 ("Bronx Warehouse & Yard"), and (iii) 6 Keiffer Lane, Kingston, NY 12401 ("Kingston Warehouse & Yard").

10

46.     According to Defendant U.S. Crane's website at http://www.uscrnyc.com, "Since 2000, US Crane and Rigging, LLC strives to provide quality, innovative and unique solutions for our customers' complex rigging jobs…Our family-owned and operated company delivers customized solutions to satisfy your specific requirements by offering a wide range of services, from bare crane rental to warehousing, specialized hoisting and rigging operations, heavy lifts and transport solutions."  The U.S. Crane website provides the exact same contact addresses as Defendants' NY Hoist website, including the Yard, the Bronx Warehouse & Yard, and the Kingston Warehouse & Yard, and labels Defendants' Central Office as the "Corporate Headquarters."

47.     According to Defendant NY Pre-Cast's website at http://www.nyprecast.com, "New York Precast is the biggest non-union, full service precast fabrication and erection company in the northeast, operating in all 5 boroughs and the surrounding area.  We provide precast hollow core concrete planks – a high-performance, cost-effective solution to your buildings flooring and roofing needs.  We also offer turnkey services for your entire superstructure from the ground up.  Rapid, year-round construction gets the job done fast." The NY Pre-Cast website also lists the Kingston Warehouse & Yard as its contact address.

48.     Upon information and belief, the Individual Defendants handled the NY Hoist Enterprise's payroll and recordkeeping from Defendants' Central Office and are actively involved with the Defendants' day to day operations.

49.     Upon information and belief, Defendants share employees within the NY Hoist Enterprise and require Plaintiffs and Defendants' other laborers, erectors and hoist operators to work for all of the Corporate Defendants.

50.     Upon information and belief, Defendant T. Auringer is an owner of the

11

Corporate Defendants.  According to the New York Department of Corporations, Defendant T. Auringer is the chief executive officer of NY Plank Inc and SSB Hoist, Inc.  Plaintiffs have routinely seen T. Auringer at Defendants' construction projects on a daily basis to meet with general contractors and to walk through the job sites in order to supervise the work of all Defendants' employees, including Plaintiffs.

51.    Upon information and belief, Defendant D. Auringer is an owner of the Corporate Defendants.  According to the New York Department of Corporations, Defendant D. Auringer is the chief executive officer of NY Steel Inc.  Plaintiffs have routinely seen D. Auringer at Defendants' construction projects on a daily basis meeting with general contractors and walking through the job sites in order to supervise the work of all Defendants' employees, including Plaintiffs.

52.    Upon information and belief, Defendants' employee, Juan Romero ("Romero"), is the site supervisor at Defendants' sites located in New York City.  Plaintiffs have seen Romero overseeing the projects at all of the job sites on a daily basis, as well as keeping track of laborers' hours worked and reporting these hours to the Individual Defendants each week.

53.    Upon information and belief, Defendants' employee, Joe "Doe" ("J. Doe"), is the site supervisor at Defendants' sites located in upstate New York.  Upon information and belief, Plaintiffs have seen J. Doe overseeing the projects at all of the upstate New York job sites on a daily basis, as well as keeping track of laborers' hours worked and reporting these hours to the Individual Defendants weekly.

54.    Upon information and belief, Defendant R. Auringer is a foreman for the NY Hoist Enterprise whereby she operates and manages the NY Hoist Enterprise under the direction of Defendant T. Auringer.  In particular, R. Auringer is in charge of overseeing

12

Defendants' day-to-day operations and setting Plaintiffs' pay rate and schedule, and in fact did supervise Plaintiff Rosado and set his pay rate and schedule. Throughout the relevant time period, Plaintiffs have witnessed R. Auringer arrive at the Yard each morning in order to assign Defendants' employees, including Plaintiff Rosado, to specific job sites and then return to Defendants' Central Office to continue overseeing and managing Defendants' operations.

55. Upon information and belief, Defendants employ at least forty (40) employees at any one time. Plaintiffs and a large number of Defendants' other employees have not received: (i) wages for all hours worked; and (ii) overtime pay as required by the FLSA and the NYLL.

<u>Plaintiffs' Work for Defendants</u>

56. Plaintiff Rosado was employed by Defendants as a hoist operator beginning in or around January 2009 until in or around January 2013 (the "Rosado Employment Period").

57. Throughout the Rosado Employment Period, Rosado primarily performed work for NY Hoist and NY Plank. Throughout the Rosado Employment Period, Rosado's job responsibilities included flagging traffic, drilling, steel work and erecting hoist towers. Rosado reported to R. Auringer, his direct supervisor.

58. Beginning in or around January 2009 until on or around December 28, 2012, Rosado typically worked five (5) days per week from approximately 6:00 am until between approximately 3:30 pm to 4:30 pm with a thirty (30) minute lunch break, for a total of between approximately forty-five (45) to fifty (50) hours per week. Despite the fact that he often worked more than forty (40) hours in a given week, Rosado was not paid at overtime rates for all hours worked beyond forty (40) each week throughout the Rosado Employment Period.

59. Beginning in or around December 28, 2012 until in or around January 2013,

after suffering an injury at work, Rosado was typically required to work three (3) days per week, despite continuing to be required by Defendants to arrive at the Yard five (5) days per week in order to receive potential job assignments.  If Defendants did not assign him to a job, Rosado was required to return home without receiving any pay for that day.

60.     Plaintiff Rosado was typically required to arrive at the Yard in the morning between 6:00 and 7:00 am to receive a job assignment.  Rosado was not compensated for time spent at the Yard and traveling between the Yard and the job sites.

61.     Throughout the Rosado Employment Period until in or around January 2013, Rosado earned an hourly rate of $10.00 per hour.  Beginning in or around January 2013 and throughout the remainder of the Rosado Employment Period, Rosado earned a rate of $11.00 per hour.

62.     Throughout the Rosado Employment Period, during any weeks when Rosado worked forty (40) or more hours at the job sites, Rosado was paid by check for the first forty (40) hours, and for all hours worked beyond forty (40) at the job sites in any given week, Rosado received either cash, which was inserted into an envelope, or a personal check.  Rosado was required to pick up his wages for hours worked over forty (40) at Defendants' Central Office from either R. Auringer or one of Defendants' cashiers.  The cash or personal check received by Rosado compensated him for hours worked beyond forty (40) in one week at his "straight time" rate, despite the fact that he was entitled to compensation at time and one-half his regular rate for all hours worked.

63.     Throughout the Rosado Employment Period, Rosado's weekly paychecks included a false calculation of the hours worked at the job sites and the cash or personal checks meant to compensate Rosado for the hours he worked over (40) hours each week were always

14

missing hours as well.  Specifically, Rosado was frequently not compensated for time spent working after 3:30 pm. In addition to the incorrect calculation of time spent at the job sites, Rosado was not compensated for time spent at the Yard or traveling between the Yard and job sites.

64.     Beginning in or around the summer of 2011 until in or around the summer of 2012, Rosado worked approximately two (2) days per week at a building located at 70 Bruckner Street which displayed government signs informing workers that the site was a prevailing wage project ("Bruckner Prevailing Wage Project").  While working on the Bruckner Prevailing Wage Project, Rosado received a paycheck with an hourly wage of approximately $75.00 per hour but was required by R. Auringer to cash his check and pay back to her $50.00 per hour, for each hour that he worked on the project.  As a result of this obligatory "kickback," Rosado only received $25.00 per hour while working on the Bruckner Prevailing Wage Project, despite the fact that the applicable prevailing wage rate was approximately $75.00 per hour.  Upon information and belief, Defendants maintained a corporate policy of receiving unlawful kickbacks by requiring that Defendants' employees working on prevailing wage projects cash their checks and pay Defendants a portion of the prevailing wages they earned.

65.     Throughout the Rosado Employment Period, Rosado complained to R. Auringer on an almost weekly basis about not receiving wages for all the hours he worked.  In response, R. Auringer either ignored Rosado's complaints or stated, "Do me a favor, don't worry about it; I always take care of your guys."

66.     Plaintiff Avila was employed by Defendants as a laborer, steel worker and connector beginning in or around 2007 through the present (the "Avila Employment Period").

15

67.     Throughout the Avila Employment Period, Avila has worked for NY Hoist, NY Plank, NY Pre-Cast, NY Steel and U.S. Crane, performing general labor, completing hoist installations, connecting and erecting steel, pouring cement, and attaching plants to trucks. Throughout the Avila Employment Period, Avila reported to R. Auringer.

68.     Throughout the Avila Employment Period, Avila typically worked five (5) to six (6) days per week from approximately 6:00 am until between approximately 5:00 pm to 8:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately fifty (50) to seventy (70) hours per week. For his work, Avila was paid at a rate of between approximately $15.00 and $28.00 per hour.

69.     When working for NY Hoist, Avila was paid entirely in cash at his hourly rate. When working for NY Plank, NY Pre-Cast, NY Steel and U.S. Crane, Avila was paid weekly by paycheck at his hourly rate.  Throughout the Avila Employment Period, Avila's paychecks included a false calculation of the hours he worked and routinely were missing approximately four (4) to five (5) hours per week.  In addition to the incorrect calculation of hours that he spent working at the job sites, Avila was not compensated for time that he spent working at the Yard or traveling between the Yard and the job sites.

70.     Plaintiff Corrales was employed by Defendants as a laborer beginning in approximately August 25, 2007 through the present (the "Corrales Employment Period").

71.     Throughout the Corrales Employment Period, Corrales worked for NY Plank and U.S. Crane performing general labor, completing hoist installations, pouring cement, and attaching plants to trucks.  Throughout his employment with Defendants, Corrales reported to Romero.

72.     Throughout the Corrales Employment Period, Corrales typically worked five (5)

16

days per week from approximately 6:00 am until between approximately 4:00 pm to 6:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately fifty (50) to sixty (60) hours per week.

73.     Corrales was required to arrive at the Yard at 6:00 am to receive a job assignment and to clean and load the trucks with tools.  He was not compensated for time spent at the Yard or traveling between the Yard and the job sites.

74.     When working for U.S. Crane, Corrales was paid entirely in cash at a rate of $100 per day, which he was required to pick up from Defendants' Central Office.  When working for NY Plank, Corrales was paid weekly by paycheck at a rate of between $10.00 per hour to $13.00 per hour.  Corrales' paychecks included a false calculation of the hours he worked at the job sites and recorded on timesheets and routinely were missing approximately two (2) to five (5) hours per week, in addition to the uncompensated time that he spent working at the Yard and traveling between the Yard and the job sites.

75.     Plaintiff Velasquez was employed by Defendants as a laborer beginning in or around 2002 until in or around January 2010 (the "Velasquez Employment Period").

76.     Throughout the Velasquez Employment Period, Velasquez worked for NY Plank, NY Pre-Cast, NY Steel, and NY Hoist, performing general labor, completing hoist installations, pouring cement, and installing planks.  Throughout his employment with Defendants, Velasquez reported to Romero.

77.     Throughout the Velasquez Employment Period, Velasquez typically worked five (5) to seven (7) days per week from approximately 6:00 am until between approximately 5:00 pm to 8:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately sixty (60) to seventy (70) hours per week.

17

78.     Velasquez arrived at the Yard at approximately 6:00 am to load trucks with tools and materials for the day's work.  He was not compensated for time spent working at the Yard or traveling between the Yard and the job sites.

79.     Throughout the Velasquez Employment Period, Velasquez was paid weekly by paycheck at a rate of approximately $28.00 per hour.  Velasquez's paychecks included a false calculation of the hours he worked at the job sites and routinely were missing approximately one (1) to three hours (3) per week in addition to the uncompensated time that he spent working at the Yard and traveling between the Yard and the job sites.

80.     Plaintiff Rivera was employed by Defendants as a laborer beginning in or around 2008 through the present (the "Rivera Employment Period").

81.     Throughout the Rivera Employment Period, Rivera worked for NY Pre-Cast, NY Plank and U.S. Crane, performing plank and rigging installations.  Throughout his time working for Defendants, Rivera reported to Romero.

82.     Throughout the Rivera Employment Period, Rivera typically worked five (5) days per week for NY Pre-Cast and NY Plank and approximately three (3) Saturdays per month for U.S. Crane, from approximately 6:00 am until between approximately 3:00 pm to 6:30 pm with no 30-minute uninterrupted breaks, for a total of between approximately fifty-three and one-half (53 ½) and sixty-one and one-half (61 ½) hours per week.

83.     Rivera typically arrived at the Yard at 6:00 am to receive job assignments and load the trucks.  He was not compensated for time spent working at the Yard or traveling between the Yard and the job sites.

84.     Throughout the Rivera Employment Period, when working for U.S. Crane, Rivera was paid entirely in cash at a rate of $12.00 and was required to pick up his cash wages

18

from Defendants' Central Office.  When working for NY Plank and NY Pre-Cast, Rivera was paid weekly by paycheck at a rate of $14.00 per hour.  Rivera's paychecks included a false calculation of the hours he worked at the job sites and routinely were missing approximately two and one-half (2 ½) to three (3) hours per week, in addition to time that he spent working at the Yard and traveling between the Yard and the job sites, for which he was not compensated.

85.     Plaintiff Marquez was employed by Defendants as a laborer beginning in or around November 11, 2003 through December 4, 2011 (the "Marquez Employment Period").

86.     Throughout the Marquez Employment Period, Marquez worked for NY Plank and NY Hoist performing plank and hoist installations.  Throughout his time working for Defendants, Marquez reported to Romero.

87.     Throughout the Marquez Employment Period, Marquez typically worked five (5) to six (6) days per week for NY Plank and NY Hoist from approximately 6:00 am until between approximately 6:00 pm to 7:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately fifty-five (55) to sixty (60) hours per week.

88.     Marquez arrived at the Yard at approximately 6:00 am to load tools and materials.  He was not compensated for time spent working at the Yard or traveling between the Yard and the job sites.

89.     Throughout the Marquez Employment Period, Marquez was paid weekly by paycheck at a rate of between approximately $10.00 and $19.00 per hour.  Marquez's paychecks included a false calculation of the hours he worked at the job sites and routinely were missing approximately (8) hours per week, in addition to the time spent working at the Yard and traveling between the Yard and the job sites, for which he was not compensated.

90.     Plaintiff Khan was employed by Defendants as a labor foreman beginning in or

19

around 2005 through in or around 2010 (the "Khan Employment Period").

91.     Throughout the Khan Employment Period, Khan worked for NY Hoist, NY Pre-Cast, NY Plank, NY Steel and U.S. Crane, supervising laborers as well as working alongside laborers performing plank and hoist installations, erecting steel and operating cranes. Throughout his employment with Defendants, Khan reported to Defendant T. Auringer.

92.     Throughout the Khan Employment Period, Khan typically worked six (6) to seven (7) days per week from approximately 6:00 am until between approximately 5:00 pm to 11:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately sixty (60) to eighty (80) hours per week.  Despite the fact that he often worked more than forty (40) hours in a given week, Khan was not paid at overtime rates for all hours worked beyond forty (40) throughout the Khan Employment Period.

93.     Khan was typically required to arrive at the Yard at 6:00 am to receive a job assignment and prepare tools and materials for the day's work.  Khan was not compensated for time spent at the Yard or traveling between the Yard and the job site.

94.     Throughout the Khan Employment Period, Khan was paid weekly by paycheck at a rate of between $25.00 and $30.00 per hour.  Khan's paychecks included a false calculation of the hours he worked and routinely were missing between approximately five (5) to ten (10) hours per week, in addition to the uncompensated time spent working at the Yard and traveling between the Yard and the job sites.

95.     Throughout the Khan Employment Period, Khan, along with other laborers, complained on a weekly basis to either Defendant T. Auringer or Defendants' accountant about the hours that were missing on their paychecks.  Each time, T. Auringer or Defendants' accountant would deny that hours were missing despite the fact that Khan often times provided

his timesheets as proof of the discrepancy between the hours on his paychecks and the hours he actually worked.

96.     Plaintiff Ventura was employed by Defendants as a laborer beginning in or around 2005 through in or around 2012 (the "Ventura Employment Period").

97.     Throughout the Ventura Employment Period, Ventura worked for NY Plank, U.S. Crane, NY Pre-Cast, NY Steel and NY Hoist performing plank and hoist installations, erecting steel and operating cranes.   Throughout his time working for Defendants, Ventura reported to Romero.

98.     Throughout the Ventura Employment Period, Ventura typically worked five (5) to six (6) days per week from approximately 5:45 am until between approximately 5:00 pm to 10:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately forty-five (45) to fifty (50) hours per week.

99.     Ventura typically arrived at the Yard at 5:45 am to load trucks and materials into trucks.   He was not compensated for time spent working at the Yard or traveling between the Yard and the job sites.

100.    Throughout the Ventura Employment Period, Ventura was paid weekly by paycheck or cash at a rate of approximately $10.00 to $19.00 per hour.   When working for U.S. Crane, Ventura received either $100 per day for his work or cash at his hourly rate.   When paid by paycheck, Ventura's paychecks included a false calculation of the hours he worked at the job sites and his paycheck or cash amounts routinely were missing approximately four (4) to five (5) hours per week, in addition to uncompensated time that he spent working at the Yard and at job sites.

101.    Plaintiff Garcia was employed by Defendants as a laborer beginning in or

21

around April 2009 through on or around August 25, 2010 (the "Garcia Employment Period").

102.    Throughout the Garcia Employment Period, Garcia worked for NY Hoist and U.S. Crane performing hoist installations and operating cranes.  Throughout his employment with Defendants, Garcia reported to Romero.

103.    Throughout the Garcia Employment Period until in or around 2010, Garcia typically worked six (6) days per week from approximately 6:00 am until between approximately 4:00 pm to 6:00 pm with no 30-minute uninterrupted breaks, for a total of between approximately sixty (60) to seventy-two (72) hours per week.  Beginning in or around 2010 and throughout the remainder of the Garcia Employment Period, Garcia typically worked approximately three (3) to four (4) days per week.

104.    Garcia typically arrived at the Yard at approximately 6:00 am to load trucks. He was not compensated for time spent working at the Yard or traveling between the Yard and the job sites.

105.    Throughout the Garcia Employment Period until in or around 2010, Garcia was paid by the same paycheck for all the hours he worked regardless of which entity within the NY Hoist Enterprise he worked for.  Garcia's paychecks included a false calculation of the hours he worked and routinely were missing approximately four (4) to five (5) hours per week. Beginning in or around 2010 and throughout the remainder of the Garcia Employment Period, Garcia was paid entirely in cash when working for U.S. Crane at a rate of $100 per day.  When working for NY Plank, Garcia was paid weekly by paycheck at a rate of $12.00 per hour with approximately four (4) to five (5) hours missing from his paycheck each week, in addition to the time spent working at the Yard and traveling between the Yard and the job sites, for which he was not compensated.

22

106.    Throughout the relevant time period, Plaintiffs were required to keep track of their hours by signing a timesheet.   On a daily basis, Plaintiffs were required to sign a timesheet prepared by their supervisor who then faxed this signed timesheet to Defendants' Central Office.   This time sheet only included hours worked while at the job site.   Despite the fact that the timesheets accurately recorded the hours Plaintiffs worked at each job site, Plaintiffs' paychecks and/or cash wages did not compensate them for all of these hours. Defendants' practice of shaving hours from Plaintiffs' recorded time worked was a corporate policy that applied to all Plaintiffs and Class Members.

107.    Throughout the relevant time period, Plaintiffs were required by Defendants to report to the Yard by 6:00 am in order to receive their job assignments from either Defendant R. Auringer, T. Auringer, or their direct supervisor, and to clean and load the trucks with tools and materials for the day's work in order to arrive at their designated job site by 7:00 am.   In addition to the hours missing from their paychecks which were recorded on Plaintiffs' timesheets, Plaintiffs were also not paid for the work performed at the Yard or for traveling from the Yard to the job locations or from one job location to another.

108.    Upon information and belief, throughout the relevant time period, numerous Plaintiffs, Opt-in Plaintiffs and Class Members were paid by SSB Hoist, Urban Erectors and Super Structure Crane Rental but understood that they were always working for the same NY Hoist Enterprise.

109.    Defendants failed to provide Plaintiffs and Class Members with wage notice as required by the NYLL at the date of their hiring or by February 1 of each year and failed to provide Plaintiffs and Class Members true and accurate wage statements.   The paystubs received by Plaintiffs showed an inaccurate number of hours worked at the job sites, showed

no time at all worked at the Yard and did not show hours worked or wages earned for those jobs for which Plaintiffs were paid in cash. Defendants' failure to provide proper wage notice and wage statements were corporate policies that applied to all Plaintiffs and Class Members.

110. Plaintiffs' work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

111. The work performed by Plaintiffs required little skill and no capital investment.

112. The work performed by Plaintiffs did not require the exercise of independent business judgment.

113. Defendants have simultaneously employed other individuals like Plaintiffs during the relevant time periods and continuing until today, to perform work as laborers, steel workers, erectors, and hoist operators at Defendants' work sites. As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery, and is believed to be in excess of 40.

114. Like Plaintiffs, Defendants' other employees were required to work for Defendants in excess of forty (40) hours per week, yet Defendants failed to pay Plaintiffs and their other employees for all hours worked and overtime compensation for hours worked in excess of forty (40) hours per week, and required Plaintiffs and their other employees to pay Defendants a portion of their prevailing wages earned while working on public works projects. This refusal to pay Plaintiffs and Defendants' other employees wages for all hours worked, overtime compensation for hours worked in excess of forty (40) in a given week, and receiving kickbacks from Plaintiffs being paid prevailing wage rates are corporate policies of Defendants that apply to all of Defendants' laborers, steel workers, erectors, hoist operators and all other employees of Defendants with similar compensation structures.

115.    Upon information and belief, throughout the Collective Action Period, NY Class Period, and during the course of Plaintiffs' own employment, Defendants failed to maintain accurate and sufficient time records.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

116.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

117.    As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

118.    As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

119.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

120.    Defendants' failure to pay wages pay Plaintiffs and the Collective Action Members at the agreed-upon rates, at no less than minimum wage caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid wages at no

less than minimum wage, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

121.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

122.    As a result of Defendants' failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a), for which Plaintiffs and the Collective Action Members are entitled to relief pursuant to 29 U.S.C. § 216(b).

123.    As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

124.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

125.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action

Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

126.    Plaintiffs, on behalf of themselves, the opt-in Plaintiffs and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

127.    Defendants entirely failed to pay Plaintiffs, the opt-in Plaintiffs and the Class Members for certain hours they worked.

128.    Defendants' failure to pay Plaintiffs, the opt-in Plaintiffs, and the Class Members at the agreed-upon rates, at no less than minimum wage, constitutes a violation of, *inter alia*, NYLL §§ 191 and 198.

129.    Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages at no less than New York State minimum wage plus interest, liquidated damages, reasonable attorneys' fees, and the costs and disbursements of this action pursuant to NYLL § 663(1) et al. and § 196-d.

## FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME

130.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

131.    Defendants violated Plaintiffs' rights and the rights of the Class Members by

failing to pay them overtime compensation at rates not less than one and one-half times their regular rate of pay for each hour worked in excess of forty hours (40) per week, in violation of the NYLL and its supporting regulations.

132.    The Defendants' NYLL violations have caused Plaintiffs and the Class Members irreparable harm for which there is no adequate remedy at law.

133.    As a result of Defendants' failure to compensate its employees, including Plaintiffs and the Class Members, at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, Defendants have violated the NYLL, § 650 *et seq*., for which Plaintiffs and the Class Members are entitled to relief.

<div align="center">

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – ILLEGAL KICKBACKS**

</div>

134.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

135.    Defendants required the Plaintiffs and the Class Members to pay Defendants a portion of their prevailing wages, in violation of New York Labor Law § 198-b.

136.    Defendants' failure to comply with New York Labor law's prohibition on kickbacks caused the Plaintiffs and the Class Members to suffer loss of wages and interest thereon.

<div align="center">

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**

</div>

137.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

138.    Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3).  Specifically, Defendants failed to

supply Plaintiffs and Class Members for any wage statements for payments received in cash and failed to provide true and accurate wage statements for payments received by paycheck.

139.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS

140.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

141.    Defendant has willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

29

142.    Due to Defendants' violations of the NYLL, Plaintiffs and the Wage Notice Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, § 198(1-b)., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, and the Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative members of the Collective Action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members, appointing Plaintiffs and their counsel to represent the Class, and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violations of New York state law;

c.    An order tolling the relevant statutes of limitations;

d.    An order declaring that Defendants violated the FLSA;

30

e.   An order declaring that Defendants' violations of the FLSA were willful;

f.   An order declaring that Defendants violated the NYLL;

g.   An award of damages arising out of non-payment of minimum wages due under the FLSA and NYLL;

h.   An award of damages arising out of the non-payment of wages due under the FLSA and NYLL;

i.   An award of overtime compensation due under the FLSA and NYLL;

j.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216, and the NYLL;

k.   An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

l.   An award of one hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d).

m.  An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as

31

provided for by NYLL § 198(1-b).

n.  An award of prejudgment and post-judgment interest;

o.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
May 30, 2014

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective and class*

32

January 29, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Abraham Rosado_  1-29-13          _Abraham Rosado_
Signature          Date                    Printed Name

May 24, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Pedro Avila 05/24/13_  
Signature    Date

_____  
Printed Name

March 7, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


*Darwin x corrales*    *03/07/13*          *Darwin x corrales*
Signature               Date                          Printed Name

April 26, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____  5/11/13
Signature               Date

Enrique Velasquez
          Printed Name

April 12, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____    4/12/13
Signature                        Date

_____    Juan A. Rivera
                              Printed Name

May 29, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Ramon Marquez       5-29-13               Ramon Marquez
Signature           Date                  Printed Name

May 23, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NY Hoist and their respective owners and affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____  _____
Signature                Date

_____
Printed Name

14 de mayo de 2013
Página 7

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación, para impugnar a NY Hoist, et al, y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de pagar horas extras y salarios prevalecientes, como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.

_____        06/02/2013   Joseo  corrales v.
          Firma                    Fecha        Nombre Escrito

12 de abril de 2013
Página 7

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo, yo autorizo la presentación y tramitación de las reclamaciones en mi nombre y representación para impugnar a NY Hoist, et al, y sus respectivos propietarios, concesionarios, afiliados, filiales, contratistas, directores, funcionarios, basado en su fallo de horas extras y salarios prevalecientes, como exige la ley Estatal y/o Federal. Autorizo la presentación de este consentimiento en la acción(es) para desafiar tal conducta. Yo autorizo a ser nombrado como Demandante representativo en esta acción para tomar decisiones en nombre de todos los otros Demandantes referente al litigio, el método y la forma de llevar a cabo este litigio, el acuerdo con el abogado de los Demandantes en relación a los costos y honorarios de abogado, y todos los otros asuntos relacionados con esta demanda.


_Edwin Garcia_          _6-4-13_          _Edwin Rafael Garcia_
Firma                    Fecha            Nombre Escrito